**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal case No. 19-cr-00070-PAB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. MARIA DEJESUS ARELLANO

        Defendant.

---

**MOTION TO SEVER COUNTS**

---

COMES NOW, Maria DeJesus Arellano, and moves this Court for severance pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure. Ms. DeJesus Arellano states the following as grounds:

Ms. DeJesus Arellano has been indicted in a two-count indictment (doc. 1). She is accused in Count One of distributing and possessing with the intent to distribute methamphetamine. In Count Two, she is accused of being found in the United States after having been denied admission, excluded, deported, and removed from the United States six years ago, without proper permission to reapply for admission.

Specifically, with respect to the drug charge, discovery alleges that pursuant to information from a confidential informant, Ms. DeJesus Arellano was followed by law enforcement. On January 17, 2019, law enforcement conducted a traffic stop of Ms. DeJesus Arellano and searched her vehicle, locating two pounds of meth in a Walmart bag behind the passenger seat floorboard.

With respect to the illegal reentry charge, discovery alleges that Ms. DeJesus Arellano was removed to Mexico on April 6, 2013, through Eagle Pass, Texas, after which point, she illegally reentered the United States.

### **MISJONIDER**

While the rule of joinder is to be broadly construed to enhance the efficiency of the justice system, *United States v. Janus Industries*, 48 F.3d 1548, 1557 (10th Cir. 1995) (citing Fed. R. Crim. P 8), counts one and two in this case are misjoined because they do not satisfy the necessary requirements for joinder under Federal Rule of Criminal Procedure 8(a).  They are not "of the same or similar character," "based on the same act or transaction," or "parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).

The possession of drugs and presence in the United States after being removed cannot be of the same or similar character.  While law enforcement learned of both offenses and effected an arrest for both offenses on the same date, they are not based on the same act or transaction.  The drugs are alleged to have been located on January 17, 2019.  The removal from the United States is alleged to have occurred on April 6, 2017, through Texas, with a return to the United States some time after, with only the finding of Ms. DeJesus Arellano in the United States on January 17, 2019.

### **SEVERANCE**

Even if the Court disagrees and rules that misjoinder has not occurred in this case, the Court may still order separate trials of counts one or two "'[i]f it appears that a defendant … is prejudiced by a joinder of offenses.'"  *Janus Industries*, 48 F.3d at 1557;

*See* Fed. R. Crim. P. 14(a).  Such prejudice exists where a defendant's right to a fair trial is threatened or actually deprived.  *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997).  The Court must determine if the prejudice against the defendant outweighs the expense and inconvenience of separate trials, when deciding a motion for severance.  *United States v. Hutchinson*, 573 F.3d 1101, 1025 (10th Cir. 2009); *Janus Industries*, 48 F.3d at 1557.

Ms. DeJesus Arellano contends that the evidence that the government will likely introduce at trial in count two will harmfully and irreparably prejudice her with respect to count one.  Evidence that Ms. DeJesus Arellano is a Mexican citizen and illegal immigrant in the United States is completely irrelevant to the drug charge lodged against her, yet it is not only historically prejudicial, but highly inflammatory in today's times.  Discrimination against Mexicans has risen in the United States.  *See* Attachment A, Ellen Wulfhorst, *Discrimination against Latinos in United States has risen, study says*, Thomson Reuters Foundation, December 17, 2016.  A study in the online Social Science & Medicine Journal found that the percentage of Latino men and women in the United States reporting discrimination has more than doubled since 2003.  *See* Attachment A, p. 1.  According to Joanna Almeida, assistant professor of social work at Simmons College in Boston leading the study, the research suggests an "increasingly negative immigration policy environment and anti-immigrant sentiment is likely to engender higher levels of discrimination."  *See* Attachment A, p. 2.

Racist viewpoints and anti-Mexican rhetoric have been top news stories for several years now.  For example, two women were detained by a Border Patrol agent last May for speaking Spanish in a convenience store, last year former White House

Chief of Staff John Kelly said Central Americans crossing the border are "not people who would easily assimilate," NBC Journalist Tom Brokaw said Hispanics should "work harder at assimilation."  *See* Attachment B, Suzanne Gamboa, *Racism, not a lack of assimilation, is the real problem facing Latinos in America*, NBC News, p. 2.  Other front-and-center, race-based sentiments include the Trump Campaign's recent web video ad featuring a previously deported Mexican man convicted of slaying two California deputies, grinning, saying "I'm going to kill more cops soon," with a caption reading "Democrats let him into our country.  Democrats let him stay."  *See* Attachment C, Stephen Collinson, *Trump shocks with racist new ad days before midterms*, CNN, p. 1.

Additionally, similar current new reports link Mexican illegal immigration and border crossings with drug dealing.  For example, in President Trump's presidential announcement speech on June 16, 2015, he told the country that:

> **When Mexico sends its people**, they're not sending their best.  They're not sending you.  They're not sending you.  They're sending people that have a lot of problems, and they're bringing those problems with us.  **They're bringing drugs.**  They're bringing crime.  They're rapists.  And some, I assume, are good people.

*See* Attachment D, Michelle Ye Hee Lee, *Donald Trump's false comments connecting Mexican immigrants and crime*, Washington Post, p. 1 (emphasis added).  Many examples of Americans internalizing these ideas exist.  Just one example occurred less than a year ago the New York Times reported on a man and his mother doing yardwork when verbally accosted by a woman calling them "illegals" and saying Mexicans are rapists, animals, and *drug dealers*.  *See* Attachment E, Sarah Mervosh, *'Why Do you Hate Us?' He Asked. 'Because You're Mexicans,' She Replied.*, New York Times, June

4

25, 2018, p. 1.  Another example of news reports linking Mexican illegal immigration with drug dealing came from the New York Times' report just two months ago that despite El Chapo's arrest, yet drugs still flow into the United States from Mexico.  *See* Attachment F, Alan Feuer, *El Chapo Is Behind Bars, but Drugs Still Flow From Mexico*, New York Times, February 13, 2019.  The article cited statistics from the D.E.A., State Department, and United Nations about the high volumes of drugs coming into the United States from Mexico.  *See* Attachment F, p. 1-2.

Because of this, evidence of Ms. DeJesus Arellano's alleged drug dealing in count one will harmfully and irreparably prejudice her with respect to count two.  And her alleged illegal reentry will harmfully and irreparably prejudice her with respect to count one.  Evidence of alleged drug dealing has absolutely no relevance to whether Ms. DeJesus Arellano is in the United States after being removed to Mexico, but the negative associations in our current culture between drugs and Mexicans will cause jurors to be more likely to think that if she was dealing drugs she is more likely to be in the United States illegally, and vice versa.

Therefore, Ms. DeJesus Arellano's right to a fair trial under the Due Process Clause on count one will be significantly threatened if her immigration status, relevant only to count two, is admitted in a joint trial on both counts.  Ms. DeJesus Arellano's right to a fair trial under the Due Process Clause on count two will be significantly threatened if her alleged drug dealing, relevant only to count one, is admitted in a joint trial on both counts.  The prejudice to Ms. DeJesus Arellano outweighs the cost of separate trials.  This is especially true in light of the very limited evidence that is expected to overlap: that Ms. DeJesus Arellano was stopped by law enforcement on

January 17, 2019, and ultimately provided the name Maria DeJesus Arellano to agents during the booking process. This is likely quite short testimony from one witness and not expected to be much more extensive than described above. The remaining testimony as to either count would not overlap.

Consequently, in light of the prejudice to Ms. DeJesus Arellano caused by continued joinder of offenses and the minimal expense and inconvenience of separate trials, it is in the interests of justice that counts one and two be severed. Severance is necessary to afford Ms. DeJesus Arellano her right to a fair trial under the Due Process Clause of the United States Constitution. U.S. CONST. amend VI.

WHEREFORE, Ms. DeJesus Arellano moves for an Order severing counts one and two for trial.

Dated this 16th day of April, 2019.

Respectfully Submitted,

*sl Adam M. Tucker*
ADAM M. TUCKER
*Attorney for Defendant Maria DeJesus Arellano*
*1775 Sherman Street #1650*
*Denver CO 80203*
Telephone: 720-355-2522
adam@tucker.legal

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of April, 2019, I electronically filed the foregoing Motion to Sever Counts with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

Jeanne Z. M*oore*
Paralegal to Adam M. Tucker
